IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHELLE RENEE MARSHALL        :

            :

       v.             :    Civil Action No. DKC 18-1462
                         Criminal Case No. DKC 16-404

            :

UNITED STATES OF AMERICA

            :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is a motion to vacate sentence pursuant to 28 U.S.C. § 2255 filed by Michelle Renee Marshall. (ECF No. 61).[1] The Government filed an opposition, (ECF No. 66), Ms. Marshall replied (ECF No. 71), and filed a supplement (ECF No. 72). For the following reasons, the motion will be denied.

**I.  Background**

Ms. Marshall was charged in a four-count indictment with two counts of wire fraud and two counts of aggravated identity theft. (ECF No. 1).  On January 11, 2017, she pleaded guilty pursuant to a plea agreement to counts one (wire fraud) and four (aggravated identity theft). (ECF No. 33).  Sentencing took place on June 26, 2017, and she was permitted to self-surrender on September 25,

---

[1] Also pending is a motion to amend payment schedule while incarcerated.  (ECF No. 59).  That motion is moot, because Ms. Marshall has been released.  In addition, the motion to appoint counsel will be denied.  (ECF No. 73).

2017.  (ECF Nos. 54; 58).  She filed the pending motion to vacate on May 21, 2018.  (ECF No. 61).

## II.  Standard of Review

To be eligible for relief under § 2255, Petitioner must show, by a preponderance of the evidence, that her "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law[.]"  28 U.S.C. § 2255(a).  A *pro se* movant, such as Petitioner, is entitled to have her arguments reviewed with appropriate consideration.  *See Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978).  But if the § 2255 motion, along with the files and records of the case, conclusively show that she is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily.  § 2255(b).

## III. Analysis

All of Ms. Marshall's claims arise from her alleged discovery, upon entering prison, that BOP policy permitted transgender "biological male inmates, many still with their genitals, to be housed in locked and unlocked prison cells with biological female inmates."  (ECF No. 61, at 8).  She claims particular sensitivity due to prior events and, asserts that, had she known of the policy, she would not have entered a guilty plea, but would have gone to

2

trial. (*Id.*, at 9).  She also asserts that the policy violates her rights under the United States Constitution. (*Id.*, at 9-15).

## A.    Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Petitioner must show both that her attorney's performance fell below an objective standard of reasonableness and that she suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991).  Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *Strickland*, 466 U.S. at 697.  To demonstrate actual prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Ms. Marshall argues that counsel's failure to advise her of collateral, or direct, consequences of her guilty plea, i.e., the potential presence of transgender inmates in close proximity, and

failure to move for a downward departure or renegotiate the plea upon learning of the policy, violated her right to the effective assistance of counsel.

It is not at all clear what "policy" is at issue, or when it went into effect. She claims to have learned, upon entering the prison in West Virginia, that the BOP had "changed the well-known policy of sex segregated jails and prisons." (ECF No. 61, at 8). The Government's response states that the BOP Transgender Offender Manual was modified on May 11, 2018, and it instructs prison officials how to designate transgender or intersex inmates. (ECF No. 66, at 4 n.1). Ms. Marshall did not contest the assertion in her reply. If that is the change in policy about which Ms. Marshall complains, it could not have been ineffective representation for her attorney not to have advised her about it. It happened months after the plea and sentencing.

In any event, there is no authority requiring counsel to explain, or perhaps even be aware of, every detail of prison life to which a defendant who is contemplating entering a guilty plea resulting in imprisonment will be exposed. In *Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010), the Supreme Court of the United States reiterated that, under *Strickland*, the question is whether the attorney performed reasonably "under prevailing professional norms[,]" as reflected in American Bar Association standards and other guides. These are "valuable measures of the prevailing

professional norms of effective representation[.]" *Padilla*, 559 U.S. at 367.

There does not appear to be anything in the ABA standards that specifies knowledge and advice about prison conditions, which arguably might be a direct consequence of conviction. There is general guidance on collateral consequences:

> (a) Defense counsel should identify, and advise the client of, collateral consequences that may arise from charge, plea or conviction. Counsel should investigate consequences under applicable federal, state, and local laws, and seek assistance from others with greater knowledge in specialized areas in order to be adequately informed as to the existence and details of relevant collateral consequences. Such advice should be provided sufficiently in advance that it may be fairly considered in a decision to pursue trial, plea, or other dispositions.

> (b) When defense counsel knows that a consequence is particularly important to the client, counsel should advise the client as to whether there are procedures for avoiding, mitigating or later removing the consequence, and if so, how to best pursue or prepare for them.

> (c) Defense counsel should include consideration of potential collateral consequences in negotiations with the prosecutor regarding possible dispositions, and in communications with the judge or court personnel regarding the appropriate sentence or conditions, if any, to be imposed.

Standard 4-5.4 Consideration of Collateral Consequences, *ABA Standards for Criminal Justice*. A law review article, published shortly after *Padilla*, noted that the type of advice required in the context of a guilty plea is to assist in the decision whether to plead guilty or go to trial. McGregor Smyth, *From "Collateral"*

to "*Integral*": *The Seismic Evolution of* Padilla v. Kentucky *and Its Impact on Penalties Beyond Deportation*, 54 How.L.J. 795 (2011). Concrete circumstances, such as loss of housing, or requirement to register as a sex offender, are the focus of counsel's responsibilities.  If the nature of the offense to which a defendant pleads guilty, or the length of a sentence, affects the relevant collateral consequence, then counsel is expected to explore the alternatives.  Here, however, because Ms. Marshall would face the same conditions of confinement regardless of whether she pleaded guilty or was convicted after a trial, there is no authority, by guideline or otherwise, requiring counsel to advise on BOP policies.  Moreover, Ms. Marshall had served time in prison before, and accordingly, could be expected to know, more than a first offender, what imprisonment entailed.

Thus, Ms. Marshall has failed to demonstrate that counsel's performance fell below an acceptable degree of professional conduct.

### B.   Plea was not knowing and intelligently given

In her list of issues, but not in the argument section, Ms. Marshall also asserts that her guilty plea was not voluntary and intelligent.  Thus, it is not clear that she has raised it as a stand-alone issue, or as a component of her ineffective assistance of counsel claim.  A guilty plea, to be valid, must be voluntary and waivers of rights must be knowingly and intelligently made,

with sufficient awareness of relevant circumstances and likely
consequences. *United States v. Ruiz*, 536 U.S. 622, 629 (2002)
(citing *Brady v. United States*, 397 U.S. 742, 748 (1970) and *Boykin
v. Alabama*, 395 U.S. 238, 242 (1969)).   In *Ruiz*, the Court
observed:

> [T]his Court has found that the Constitution, in respect
> to a defendant's awareness of relevant circumstances,
> does not require complete knowledge of the relevant
> circumstances, but permits a court to accept a guilty
> plea, with its accompanying waiver of various
> constitutional rights, despite various forms of
> misapprehension under which a defendant might labor.

*Id.* at 630.   Ms. Marshall obviously knew that incarceration in a
federal prison facility was a consequence of her guilty plea.
There is no requirement that she be aware of all facets of
imprisonment in order to enter a proper guilty plea.

##### C.   Constitutional Challenges

As pointed out by the Government, challenges to conditions
of confinement are not cognizable in this type of habeas action.
Any complaints of that nature would have to be presented in the
district of confinement and against a proper defendant.   Thus,
allegations of cruel and unusual punishment or violation of the
First Amendment will not be further discussed.   Ms. Marshall's ex
post facto argument asserts that the change in BOP policy increased
her punishment after the commission of her crime.   As recently
summarized:

The Constitution forbids Congress or the states from passing any ex post facto law. *See* U.S. Const. art. I, § 9, cl. 3; *id.* § 10, cl. 1. An ex post facto law is one that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325–326, 18 L.Ed. 356 (1866)), *limited on other grounds by Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). The Constitution's prohibition on ex post facto laws "ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action." *Peugh v. United States*, 569 U.S. 530, 544, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013) (citing *Weaver*, 450 U.S. at 28–29, 101 S.Ct. 960).

*United States v. Wass*, 954 F.3d 184, 189 (4th Cir. 2020). But, in order to apply, the disputed provision must constitute punishment, and not simply be part of a regulatory scheme. It is far from established that the policy at issue here can be characterized as punishment. Instead, it is part of the BOP's regulatory machinery for managing inmates. Moreover, again, any remedy would not be to overturn her sentence, but to eliminate the additional "punishment," something beyond the authority of this court to effectuate in this instance.

IV. **Conclusion**

For the foregoing reasons, the motion to vacate will be denied. Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When the district court denies relief on the merits, a prisoner satisfies this standard by demonstrating that reasonable jurists could find the district court's assessment of the constitutional claims debatable or wrong.  *See Buck v. Davis*, --- U.S. ----, 137 S. Ct. 759, 773-74 (2017).  When the district court denies relief on procedural grounds, the prisoner must demonstrate both that the dispositive procedural ruling is debatable and that the motion states a debatable claim of the denial of a constitutional right.  *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012) (*citing Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Ms. Marshall has not made the necessary showing and a certificate of appealability will not issue.  A separate order will follow.

                                          /s/
                                   _____
                                   DEBORAH K. CHASANOW
                                   United States District Judge